# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:08-cv-00345 AWI GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS ON |
| | ) | PLAINTIFF'S *EX PARTE* APPLICATION FOR |
| v. | ) | DEFAULT JUDGMENT |
| | ) | (Document 19) |
| APPROXIMATELY $10,647.00 IN U.S. | ) | |
| CURRENCY, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

In this civil forfeiture action, plaintiff United States of America ("Government") seeks:

1.  Default judgment against the interests of Alfonso Valencia Chavez and Ali Mohammad Musleh in approximately $10,647.00 in U.S. Currency ("defendant currency"); and,

2.  Entry of a final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency.

No timely papers were filed to oppose the Government's application for default and final forfeiture judgment. The matter was heard on September 26, 2008, before the Honorable Gary S. Austin, United States Magistrate Judge. Assistant United States Attorney Stephanie Hamilton Borchers appeared on behalf of the Government. No appearances were made on behalf of any

potential claimants.  For the reasons discussed below, this Court RECOMMENDS to:

1.    GRANT the Government default judgment and to ENTER final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency; and

2.    ORDER the Government, within 10 days of service of an order adopting these findings and recommendations, to submit a proposed default and final forfeiture judgment consistent with these findings and recommendations.

## BACKGROUND[1]

### Seizure of Defendant Currency

On or about June 20, 2002, two individuals described as Confidential Source-1 (hereafter "CS1") and Confidential Source-2 ("CS2") informed agents with the Drug Enforcement Administration ("DEA") that Ali Mohammed Musleh (hereafter "Musleh") was looking for between 30 to 50 cases of pseudoephedrine for resale in Fresno, California.  Musleh told both CS1 and CS2 that he had the money to purchase the cases.

On or about June 23, 2002, CS2 advised agents that CS1 and CS2 contacted Musleh at his work at Central Madera Market in Madera, California and asked Musleh if they were going to conduct the transaction the following day (June 24, 2002) because if not, CS1 and CS2 would be leaving the area.  Musleh stated that he gave the money back to "his people" and he would need to call to find out if they still needed the pseudoephedrine.  CS2 stated that Musleh called him/her 45 minutes later and asked if they could bring 35 cases of pseudoephedrine the next day to Tulare, California.  CS2 said s/he would call Musleh back the next morning.

On June 24, 2002, at approximately 11:30 a.m., agents established surveillance at the Central Madera Market located at 728 South 'C' Street in Madera, California.  At approximately 12:00 p.m., an agent observed Musleh exit the Central Madera Market, enter a white Chevy Astro Van, and travel onto California Highway 99.  Musleh then exited in Goshen, California and arrived at an ARCO gas station where Musleh exited the vehicle and began talking on a

---

[1]    The below factual recitation is based on the Government's papers and record before this Court.

2

cellular phone.  Several minutes later, agents observed a Hispanic male identified as Jose Guadalupe Orozco-Sandoval driving a burgundy Nissan truck meet Musleh at the ARCO, exchange words and then depart the ARCO traveling southbound on California Highway 99 in their respective vehicles.

At approximately 1:00 p.m., an agent advised surveillance units that the call Musleh placed at the ARCO station was to CS1 arranging to meet at a K-Mart parking lot in Delano, California.  At approximately 1:43 p.m., an agent observed Musleh and Orozco-Sandoval arrive at a restaurant in Delano, California. Musleh and Orozco-Sandoval had a short conversation and looked inside the bed of the Nissan truck.  Musleh got inside the Nissan truck and Orozco-Sandoval went into the restaurant.  Musleh left the restaurant in the Nissan truck and headed to the K-Mart parking lot located about 1/4 mile northeast.

Musleh entered the north side of the K-Mart parking lot at approximately 1:49 p.m. An officer with the Bakersfield Police Department ("BPD") observed Musleh exit the Nissan and remove a large bag from the bed of the truck.  Musleh walked to the passenger side of the truck, placed the bag on the floorboard, and began shuffling through its contents.  Musleh then entered the Nissan truck on the passenger side, reached down where he placed the bag on the floorboard, and exited the vehicle while adjusting all four of his pants pockets while walking away.  Musleh then met with CS1 and CS2 and all three individuals walked to the Nissan truck and Musleh and CS1 sat in the vehicle.  At approximately 2:00 p.m., CS1, CS2, and Musleh walked away from the Nissan truck and into the K-Mart.  CS1 contacted an agent and stated that there was a large amount of money in the bag that was placed on the passenger side floorboard of the Nissan truck. At approximately 2:04 p.m., all three individuals left the K-Mart and Musleh was immediately arrested for violations of California Health & Safety Code § 11383(c) and Penal Code § 182(a)(1) -Attempted Possession of Pseudoephedrine for Purposes of Manufacturing Methamphetamine and Conspiracy.

Musleh was searched and a BPD officer located a large amount of U.S. currency wrapped in rubber bands stuffed into all four of Musleh's pants pockets.  An official count of the money resulted in $10,647.00 in Musleh's possession.  When asked if the Nissan truck belonged

1   to him, Musleh answered that he did not know anything about a Nissan truck.  A BPD officer

2   found the key, which opened the door and started the ignition to the Nissan truck, in Musleh's

3   front pants pocket.

4                               **Search of Burgundy Nissan Truck**

5          Two large plastic bags were inside the Nissan truck.  Several large bundles of U.S.

6   Currency were inside the large plastic bags, some of which were wrapped in tinfoil and others

7   wrapped in rubber bands.  The amount of currency in the truck totaled $92,600.00.  Paperwork

8   found in the Nissan truck indicated that Alfonso Valencia Chavez was the registered owner of the

9   truck.  Agents arrested Orozco-Sandoval shortly thereafter at the restaurant where he had met

10  Musleh.

11         Per the Government, on or about July 11, 2002, a grand jury in the Eastern District of

12  California issued a superceding indictment against Musleh and Orozco-Sandoval for violations

13  of 21 U.S.C. §§ 841(c)(2) and 846 - Conspiracy to Possess Pseudoephedrine, a Listed Chemical,

14  Knowing or Having Reasonable Cause to Believe it Would be Used to Manufacture

15  methamphetamine, a Controlled Substance; 21 U.S.C. §§ 846 and 841(c)(2) and 18 U.S.C. § 2 -

16  Attempted Possession of Pseudoephedrine, a Listed Chemical, Knowing or Having Reasonable

17  Cause to Believe it Would be Used to Manufacture Methamphetamine, a Controlled Substance,

18  and Aiding and Abetting; and 21 U.S.C. § 853 - Criminal Forfeiture.  (*United States v. Ali*

19  *Mohammad Musleh, et al.*, 1:02-CR-05259 AWI).  On November 14, 2002, the United States

20  indicted the defendant currency in a superceding indictment in the criminal case pursuant to 21

21  U.S.C. § 853.  The criminal case is pending.

22         On August 2, 2005, the Court issued a bench warrant as to Ali Mohammad Musleh, who

23  is currently a fugitive.  On March 11, 2008, the Government filed the instant civil complaint,

24  thereby electing to pursue forfeiture proceedings against the *res* as the criminal case could not

25  proceed due to Musleh's fugitive status.  *Ex Parte* Application for Default Judgment, at p. 3.

26                               **The Government's Claims**

27         As stated, on March 11, 2008, the Government filed its verified complaint for forfeiture

28  in rem ("complaint") in this action to claim that the defendant currency is subject to forfeiture to

the Government under 21 U.S.C. § 881(a)(6) in that the defendant currency constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to such an exchange and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 *et seq.* (Doc. 1).  On March 11, 2008, this Court issued a warrant for arrest in rem ("arrest warrant") for the defendant currency.  (Doc. 5).  The arrest warrant was executed on March 28, 2008.  (Docs. 6 and 7).

## Notice Of Forfeiture Action

The Court issued its March 12, 2008 order for publication ("publication order") for the Government to provide public notice of this action and arrest of the defendant currency by publication in *The Daily Report* (Kern County).  (Doc. 4).  Such notice appeared in *The Daily Report* on April 14, 2008, and the Government filed proof of such publication on April 28, 2008. (Doc. 8).

On April 11, 2008, the United States Marshals Service attempted to personally serve Musleh with copies of the verified complaint, arrest warrant, publication order and other papers related to this action at his last known residence address.  On April 15, 2008, the United States Marshals Service again attempted to personally serve Ali Mohammad Musleh at his residence with the above-referenced documents and then left the documents inside the front door security screen.  (Doc. 9).  The Government also declares that, on or about March 20, 2008, copies of the above-referenced documents were sent to Musleh at his last known residence by first-class mail and certified mail.  The certified return receipt card was signed by Zeyed Musleh on March 25, 2008.  (Declaration of Elisa M. Maguire in Support of Request to Clerk for Entry of Default Against Ali Mohammad Musleh, at ¶ 7 and Exhibit B; Doc. 11-2).

On April 15, 2008, the United States Marshals Service attempted to personally serve copies of the above-referenced documents on Alfonso Valencia Chavez at his residence in Goshen, California.  The residence appeared "possibly vacant" and the United States Marshals Service left the documents inside the front screen door.  (Doc. 10).  The Government also declares that on or about March 20, 2008, copies of the documents were sent to Alfonso Valencia Chavez at his residence by first-class mail and certified mail.  The certified return receipt card

was signed by Dominga Cruz on March 24, 2008.  (Declaration of Elisa M. Maguire in Support of Request to Clerk for Entry of Default Against Alfonso Valencia Chavez, at ¶ 7 and Exhibit B; Doc. 12-2).

### Default Entries

At the Government's request, this Court's clerk entered defaults in this action as to Musleh and Alfonso Valencia Chavez on June 4, 2008.  (Docs. 14 and 15).

### DISCUSSION

### Complaint's Sufficiency

The Government contends that its complaint's allegations and the facts cited "provide ample grounds" for the defendant currency's forfeiture.  A complaint's sufficiency is a factor to consider when deciding whether to grant default judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).  In its moving papers, the Government asserts that the Verified complaint alleges that the defendant currency constitutes moneys or other things of value furnished or intended to be furnished by any persons in exchange for a controlled substance, all proceeds traceable to such an exchange and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 *et seq.*  The Government further contend that the facts as alleged in the Verified Complaint establish the defendant currency as monies directly intended to be furnished in exchange for a drug transaction and therefore falls squarely under the statute.

The Verified Complaint meets the requirements of Supplemental Rule G.  It is verified, states the grounds for subject matter jurisdiction, *in rem* jurisdiction, and venue, describes the property seized and the circumstances surrounding the seizure and identifies the relevant statutes.  *See* Complaint and Verification (Doc. 1).  In the absence of assertion of interests in the defendant currency, this Court is not in a position to question the facts supporting the forfeiture. *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true."); *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).  The facts as alleged provide a sufficient connection between the defendant funds and illegal drug activity to support the forfeiture.

**Notice Requirements**

The Government contends that it provided required notice for the defendant currency's forfeiture.  The Fifth Amendment's Due Process Clause prohibits the Government to deprive property without "due process of law."  Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard."  *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S.Ct. 492 (1993).

  1.  Notice by Publication

Judicial property forfeitures are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Supplemental Rule G(4) sets forth the rules for publication of the notice of action in federal forfeiture proceedings.  Generally, Rule G(4)(a)(iii)(A) requires that published notice must appear once a week for three consecutive weeks.  However, the rules provide an exception requiring publication only once if, before the action was filed, notice of nonjudicial forfeiture of the same property was published in a newspaper of general circulation for three consecutive weeks in the district where the property was seized.  Supplemental Rules G(4)(a)(iii)(B) and G(4)(a)(iv).  In this case, notice of the administrative forfeiture against the defendant currency was published in the *Wall Street Journal* by the Drug Enforcement Administration for three weeks on August 26, September 2 and September 9, 2002. (*See* Docs. 11-2 and 12-2; Declaration of Elisa M. Maguire in Support of Request to Clerk for Entry of Default Against Ali Mohammad Musleh, at ¶ 5 and  Declaration of Elisa M. Maguire in Support of Request to Clerk for Entry of Default Against Alfonso Valencia Chavez, at ¶ 5].)  Accordingly, the Government was required to publish notice of the action only once pursuant to the Supplemental Rules.

This Court's Local Admiralty and In Rem Rules echo Supplemental Rule G(4)'s notice of forfeiture action by court-ordered publication in a newspaper of general circulation in the district where the action is filed.  *See* Local Rule A-530 (incorporating Local Rule 83-171 by which court is to designate appropriate newspaper and manner of publication).  The Government accomplished such notice with the publication order, publishing notice of this action and the arrest of the defendant currency in *The Daily Report* on April 14, 2008.

2.      Personal Notice

When the Government knows of an owner of defendant property, the owner has a constitutional right of due process to require "the Government to make a greater effort to give him notice than otherwise would be mandated by [publication]." *United States v. Real Property, 135 F.3d 1312, 1315 (9th Cir. 1998)*.  For such persons, the Government must attempt to provide actual notice by means "'reasonably calculated under all circumstances' to apprise [the person] of the pendency of the cash forfeiture[.]" *Dusenberry v. United States, 534 U.S. 161, 168, 122 S.Ct. 694 (2002)*.  The Government must provide such notice "as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652 (1950)*.  "Reasonable notice, however, requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice."  *Mesa Valderrama v. United States, 417 F.3d 1189, 1197 (11th Cir. 2005)*.

Supplemental Rule G(4)(b) mirrors this requirement, providing for notice to be "sent by means reasonably calculated to reach the potential claimant."  Additionally, this Court's Local Rule A-540 addresses notice to persons known to have an interest in property subject to forfeiture.  The rule requires that a party seeking default judgment in an action in rem to show to the Court's satisfaction that due notice and arrest of the property has been given by: (1) publication; (2) by personal service on the person having custody of the property; (3) if the property is in the hands of a law enforcement officer, by personal service on the person having custody prior to its possession by law enforcement agency or officer; and (4) by personal service or certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success.  Local Rule A-540(a).

Notwithstanding the Supplemental Rules and Local Rule A-540(a), the Government provides sufficient notice if such notice complies with Federal Rule of Civil Procedure 4 requirements.  *See* Fed.R.Civ.P. 4(n)(1) (when a federal statute authorizes forfeiture, "[n]otice to

1  claimants of the property shall then be sent in the manner provided by statute or by service of a

2  summons under this rule").

3      Here, the Government gave notice by publication and also attempted to personally serve

4  Musleh with the complaint, arrest warrant, publication order and other papers regarding this

5  action by leaving the papers at his last known residence.  Supplemental Rule G(4) permits direct

6  notice to be sent to the last address of a person from whom the property was seized and who is

7  not incarcerated.  The Government also sent copies of the complaint and related papers to

8  Musleh by certified mail.[2]  Musleh is reported to be a fugitive in the related criminal proceeding.

9  The Ninth Circuit follows the rule in civil forfeiture actions that "[w]hen the government can

10 reasonably ascertain the name and address of an interested party ... due process requires that the

11 government send '[n]otice by mail or other means to ensure actual notice.'  Due process does not

12 require, however, that the interested party actually receive notice." *Real Property*, 135 F.3d at

13 1316 (citations omitted).

14     With respect to Mr. Chavez, the Government also gave notice by publication and

15 attempted to serve him personally by leaving the papers at his last known residence and by

16 sending the papers certified mail to his last known address.  The Government notes that the

17 defendant currency was seized from Musleh and that he was the only claimant requiring personal

18 service; nevertheless, the Government attempted to personally serve all known potential

19 claimants, including Mr. Chavez.

20                                 **Failure To Answer**

21     The Government contends that this Court's clerk properly entered defaults against

22 Musleh and Mr. Chavez.  Supplemental Rule G(5) addresses responsive pleadings in civil

23 forfeiture actions such as this and requires a person who asserts an interest in or right against the

24 subject property to file a claim in this court within 35 days after the date of service of the

25 _____

26 [2]In a supplemental notice and declaration filed on September 26, 2008, the Government indicates that it also
   sent notice of the forfeiture action, a copy of the complaint and other papers in this action by first class mail to
27 Musleh's attorney of record in the related criminal matter.  *See* Notice of Supplemental Declaration Regarding
   Additional Service in Support of Plaintiff's Motion for Default Judgment; Supplemental Declaration of Elisa
28 Rodriguez, at ¶ 3.  Supplemental Rule G(4)(b)(iii)(B) provides for notice to be sent by mail to the attorney
   representing the potential claimant in a related criminal case.

1    Government's complaint or 30 days after final publication of newspaper notice.  Supplemental

2    Rules G(4)(b) and G(5).  Failure to comply with procedural requirements for opposing the

3    forfeiture precludes a person from establishing standing as a party to a forfeiture action.  *Real

4    Property*, 135 F.3d at 1317.

5            As outlined above, the Government attempted to personally serve Musleh with copies of

6    the complaint, arrest warrant, publication order and other papers related to this action on April

7    15, 2008 and attempted to personally serve Mr. Chavez with copies of these documents on April

8    15, 2008.  The Government also sent copies of the documents by certified mail to Musleh and

9    Mr. Chavez on March 20, 2008.  The Government received return receipts that were signed on

10   March 25, 2008 for the documents sent to Musleh and on March 24, 2008 for the documents sent

11   to Mr. Chavez.  Publication notice was completed on April 14, 2008, and the Government filed

12   proof of such publication notice on April 28, 2008.  More than 30 days have passed since

13   completion of publication notice and more than 35 days have passed since attempted service of

14   the complaint on Musleh and Mr. Chavez.  This Court's clerk properly entered defaults upon

15   failure of the potential claimants to respond to the Government's complaint and notices in June

16   2008.

17                                    **Default Judgment**

18           The Government seeks judgment against the interests of Musleh and Mr. Chavez and

19   final forfeiture judgment to vest in the Government all right, title and interest in the defendant

20   currency.  The Supplemental Rules do not provide a procedure to seek default judgment in an

21   action *in rem*.  Supplemental Rule A provides: "The Federal Rules of Civil Procedure also apply

22   to the foregoing proceedings except to the extent that they are inconsistent with these

23   Supplemental Rules."

24           Pursuant to the Federal Rules of Civil Procedure, default entry is a prerequisite to default

25   judgment.  Federal Rule of Civil Procedure 55(a) governs entry of default: "When a party against

26   whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

27   failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Generally,

28   the default entered by the clerk establishes a defendant's liability:

1   Rule 55 gives the court considerable leeway as to what it may require as a
2   prerequisite to the entry of a default judgment. "The general rule of law is that
    upon default the factual allegations of the complaint, except those relating to the
3   amount of damages, will be taken as true." (citations omitted). *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir. 1977).

4   *Televideo Systems,* 826 F.2d at 917-918.

5       As noted above, the Government properly obtained default entries against the interests of

6   Musleh and Mr. Chavez.  There is no impediment to default judgment sought by the Government

7   as to them.  The Government properly seeks judgment against the interests of the entire world,

8   that is, a final forfeiture judgment to vest in the Government all right, title and interest in the

9   defendant currency.  "A judgment in rem affects the interests of all persons in designated

10  property. . . . [T]he plaintiff is seeking to secure a pre-existing claim in the subject property and

11  to extinguish or establish the nonexistence of similar interests of particular persons." *Hanson v.

12  Denckla,* 357 U.S. 235, 246, n. 12, 78 S.Ct. 1228 (1958).

13      In light of the defaults, a final forfeiture judgment is in order for the Government.

14                      **RECOMMENDATIONS AND ORDER**

15      For the reasons discussed above, this Court RECOMMENDS to:

16      1.    GRANT plaintiff United States of America default judgment against the interests

17            of Ali Mohammad Musleh and Alfonso Valencia Chavez in the defendant

18            currency of approximately $10,647.00 in U.S. Currency;

19      2.    ENTER final forfeiture judgment to vest in plaintiff United States of America all

20            right, title and interest in the defendant currency; and

21      3.    ORDER plaintiff United States of America, within 10 days of service of an order

22            adopting the findings and recommendations, to submit a proposed default and

23            final forfeiture judgment consistent with the findings and recommendations and

24            order adopting them.

25      These findings and recommendations are submitted to the district judge assigned to this

26  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  Within fifteen

27  (15) court days of service of this recommendation, any party may file written objections to these

28  findings and recommendations with the Court and serve a copy on all parties.  Such a document

                                        11

should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

district judge will review the magistrate judge's findings and recommendations pursuant to 28

U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153

(9th Cir.  1991).


     IT IS SO ORDERED.

     **Dated:   September 29, 2008**          _____ /s/ **Gary S. Austin**_____
                                              UNITED STATES MAGISTRATE JUDGE

12